74 F.3d 1250
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Adrian BEAUCHAMP, Defendant-Appellant.
 No. 94-4227.
 United States Court of Appeals, Tenth Circuit.
 Jan. 5, 1996.
 
 Before SEYMOUR, Chief Circuit Judge, BARRETT, Senior Circuit Judge, and KERN*, District Judge.
 ORDER AND JUDGMENT[1]
 BARRETT, Senior Circuit Judge.
 
 
 1
 Steven Adrian Beauchamp (Beauchamp) appeals from his jury conviction and sentence entered after a two-day trial in which he was found guilty of possession of a controlled substance, cocaine, with intent to distribute in violation of 21 U.S.C. 841(a)(1). Beauchamp was sentenced to 144 months incarceration, to be followed with 96 months of supervised release. He was also fined $10,000.00. A recitation of the relevant facts follows.
 
 
 2
 On October 3, 1993, Beauchamp was traveling westbound in a pickup truck on Interstate 70 (I-70) through Emery County, Utah, when he was stopped by Deputy Sheriff Richard Graham (Graham) for driving 70 miles per hour in a 65 miles per hour zone. Graham activated the video camera in his patrol car to record the stop.
 
 
 3
 As Graham approached the truck, he observed a modification to the bed of the truck. At Graham's request, Beauchamp, the sole occupant of the truck, produced a Colorado driver's license and a vehicle registration issued to one Hernan Medina of California. Beauchamp stated that Medina was a friend, that he had been in California for five days, and that he was on his way to Colorado Springs, Colorado, to drop the truck off to another friend, Jose Rios. Graham observed a gym bag and shaving kit in the truck.
 
 
 4
 Graham returned to his patrol car to run a records check on the truck and Beauchamp. The records check indicated that the truck was properly registered and that Beauchamp had been previously arrested and convicted for narcotics related offenses. Graham then returned to the truck and handed Beauchamp his driver's license, the registration, and a written warning ticket for speeding.
 
 
 5
 Graham did not tell Beauchamp that he was free to leave. Rather, Graham asked Beauchamp if there were any open containers of alcohol, controlled substances, paraphernalia, or weapons in the truck. Beauchamp responded "no" to each question. Thereafter, Graham asked Beauchamp if he could search the truck; Beauchamp consented/acquiesced to the search.
 
 
 6
 A search of the truck's interior and the gym bag did not reveal any contraband. Graham did notice a screwdriver on the seat of the truck. Graham then went to the rear of the truck where, after removing a plastic bedliner, he "observed a total of four modifications to the bed, four access panels or doors." (Appellant's Appendix, Tab 3 at 21). After observing the access panels, Graham returned to his patrol car and called for a backup. When Beauchamp inquired how long it would take, Graham responded that he had found something he wanted to check into further and that it would be a few more minutes. Beauchamp did not object.
 
 
 7
 Graham and Beauchamp visited while waiting for the backup officer to arrive. During that time, Beauchamp told Graham that he was a consultant and that he had picked the truck up in California from Carlos Rios, a friend.
 
 
 8
 After a backup officer arrived, Graham and the officer opened the four access panels. One panel contained approximately one and a half kilograms of cocaine. Beauchamp stated that he did not know anything about the cocaine. Thereafter, Beauchamp was arrested and taken to a police station.
 
 
 9
 While preparing his arrest report, Graham could not recall one of the names Beauchamp had given him. To obtain the name, Graham went to his patrol car and replayed the videotape of the stop and arrest. After obtaining the name, Graham stopped the video camera and went back into the station. When Graham subsequently attempted to remove the videotape, he realized that the video camera had self-activated and recorded over a portion of the stop and arrest. The camera had self-activated on prior occasions resulting in a record mode.
 
 
 10
 Beauchamp moved to dismiss the indictment based on the fact that the videotape of his stop was partially destroyed. He also moved to suppress the evidence seized as the result of the stop on the claim that the stop was a pretext.
 
 
 11
 Following an evidentiary hearing, a magistrate judge issued a Report and Recommendation in which he found that there was no evidence to show that Graham had any pretextual motive for the stop or that the destruction of part of the videotape was in bad faith. The magistrate judge recommended that both motions be denied. The district court adopted the magistrate judge's Report and Recommendation and denied Beauchamp's motions.
 
 
 12
 Following his conviction, Beauchamp moved for a new trial, stating "Defendant Steven Beauchamp, by and through his attorney of record ... pursuant to the provisions of Rule 33 of the Federal Rules of Criminal Procedure, hereby requests a new trial in this matter." (Appellant's Appendix, Tab 8). The motion was submitted without any supporting argument or authority. It was denied.
 
 
 13
 On appeal, Beauchamp contends: (1) the stop of the vehicle he was driving was unreasonable and pretextual; (2) his consent was neither voluntary nor unequivocal and was tainted by the illegal stop; (3) the evidence was insufficient to support his conviction; (4) the court committed reversible error by admitting evidence of his criminal record; and (5), the callous destruction of material, exculpatory portions of the videotape of the stop denied him due process of law.
 
 I.
 
 14
 Beauchamp contends that the stop of the vehicle he was driving was clearly unreasonable and a pretextual stop to conduct an unrelated investigation.
 
 
 15
 a.
 
 
 16
 Beauchamp contends that he has standing to challenge the stop of the vehicle he was driving. He cites to United States v. Erwin, 875 F.2d 268, 270 (10th Cir.1989), in which we held that "[i]t is beyond dispute that a vehicle's driver may challenge his traffic stop." We agree with Beauchamp that he has standing under Erwin to challenge the stop. The district court, citing Erwin, found that Beauchamp had "standing to contest the stop of the vehicle." (Appellant's Appendix, Tab 4 at 26).
 
 
 17
 b.
 
 
 18
 Beauchamp contends that the district court erred in finding that there was no evidence to show the officer had any pretextual motive for the stop. Beauchamp argues that the "objective facts" in this case---he was probably driving five miles over the posted speed limit, Graham did not intend to issue a speeding ticket, and department policy did not mandate that Graham stop Beauchamp and issue a citation---weigh against the government on the pretext issue. Beauchamp further argues that "[t]hese facts point invariably toward a predetermined intent to search for drugs, rather than an intent to investigate a traffic violation." (Appellant's Opening Brief at 30). We disagree.
 
 
 19
 A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. United States v. Botero-Ospina, --- F.3d --- (10th Cir.1995) (No. 94-4006, filed December 5, 1995, Sl. Op. at 9). "Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." Id., quoting Delaware v. Prouse, 440 U.S. 648, 661 (1979). It does not matter whether: (1) "the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop" quoting United States v. Ferguson, 8 F.3d 385, 391 (6th Cir.1993), cert. denied, --- U.S. --- (1994); and (2) "the officer may have had other subjective motives for stopping the vehicle." Botero-Ospina, Sl. Op. at 9. Applying these standards to our case, we hold that the stop was valid.
 
 
 20
 It is uncontested that on the day of the stop: Graham was conducting stationary radar checks on I-70 in the vicinity of mile post 147, a desolate area; Utah Code Ann. 41-6-46(2)(c) sets the speed limit on I-70 at 65 miles per hour; and, Graham stopped Beauchamp after he had clocked Beauchamp driving 70 miles per hour on I-70 in a 65 miles per hour zone.
 
 
 21
 We agree with the magistrate judge's findings, adopted by the district court, that the only evidence as to the stop was that Beauchamp was stopped for speeding:
 
 
 22
 The defendant asserts that the stop in this case was a pretext stop apparently to search for drugs. This argument is raised in every case in which a traffic stop results in the discovery of some other criminal activity; especially the discovery of drugs. However, merely because other criminal activity is discovered during a traffic stop does not make the stop pretextual.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 In this case the only evidence as to the stop is that the officer stopped the defendant's vehicle for speeding. The defendant says the officer made detailed observations that would not be consistent with a traffic stop. This is pure speculation.
 
 
 26
 * * *
 
 
 27
 * * *
 
 
 28
 The observation of the modifications to the vehicle were things that could not have been observed before the stop, but were very apparent as the officer walked up to the vehicle. Especially is this the case with regard to a trained officer who has had experience with compartments.... This was also apparent from the court's view of the vehicle in conjunction with the suppression hearing.
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 In this case the objective violation of a specific traffic law by a traffic patrol officer was presented. It is not contradicted.
 
 
 32
 * * *
 
 
 33
 * * *
 
 
 34
 Therefore, the defendant's claim of a pretext stop cannot be accepted. (Appellant's Appendix, Tab 4 at 30, 34-36).
 
 
 35
 "Findings of fact, whether based on oral or documentary evidence, shall not be be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). A finding of fact is not clearly erroneous unless it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made. Las Vegas Ice & Cold Storage Co. v. Farm West Bank, 893 F.2d 1182, 1185 (10th Cir.1990). Applying these standards, we hold that the stop was nonpretexual.
 
 II.
 
 36
 Beauchamp contends that his alleged consent to the search of the truck was neither voluntary nor unequivocal and that the search was tainted by the illegal stop. Beauchamp argues that since his consent to the search of the truck was neither voluntary nor unequivocal, the evidence seized during the search should be suppressed.
 
 
 37
 Beauchamp's arguments are predicated on the assumption that he had standing to contest the search of the truck. We detailed the circumstances and conditions under which a defendant such as Beauchamp has standing to contest a search in Erwin, 875 F.2d 268; United States v. Arango, 912 F.2d 441 (10th Cir.1990), cert. denied, 499 U.S. 924 (1991); and United States v. Martinez, 983 F.2d 968 (10th Cir.1992), cert. denied, --- U.S. --- (1993).
 
 
 38
 The district court carefully reviewed and applied these cases in finding that Beauchamp did not have standing to contest the search of the truck. We agree with the district court's findings that:
 
 
 39
 The United States has challenged the defendant's standing to contest the search. Since the government has raised the issue the burden of proof is on the defendant to show that he has standing to contest the search.... Mere possession of the vehicle and keys are insufficient to confer standing.... In United States v. Martinez, 983 F.2d 968 (10th Cir.1992) the court held that a vehicle driver and passenger had no standing or expectation of privacy in a vehicle because of the uncertainty of the ownership of the vehicle. In Martinez the court said:
 
 
 40
 * * *
 
 
 41
 * * *
 
 
 42
 In deciding whether a search has infringed upon protected constitutional rights of a particular defendant who seeks the exclusion of the resulting evidence, we examine two primary factors: 'whether the defendant manifested a subjective expectation of privacy in the area searched and whether society would recognize that expectation as objectively reasonable.' [United States v. Arango, 912 F.2d 441, 445 (10th Cir.1990) ].
 
 
 43
 * * *
 
 
 44
 * * *
 
 
 45
 In this case, the defendant first identified the registered owner as a friend. But no showing has been made of any contact between the defendant and the registered owner. The defendant said he picked up the vehicle in La Marada, California from Carlos Rios to deliver it to "Jose" in Colorado Springs. There is no evidence of any relationship between Hernan Medina, the registered owner and Carlos Rios who had allegedly given the defendant the vehicle. Jose is not further identified. There is no showing that defendant had obtained the vehicle from anyone who had a lawful right to give it to the defendant. In reality this is a stereotypical drug courier practice of providing a vehicle to the driver from some unidentified source. That provides protection for the shipper and at the same time allows the defendant to assert no knowledge of the vehicle's contents. Under such circumstances, defendant has no standing to contest the search of the vehicle.
 
 
 46
 (Appellant's Appendix, Tab 4 at 20-21 and 23-24).
 
 
 47
 We hold that Beauchamp does not have standing to challenge the search of the vehicle.
 
 III.
 
 48
 Beauchamp contends that the evidence was insufficient to convict him of possession with intent to distribute cocaine and, accordingly, the district court erred in denying his motion for judgment of acquittal.
 
 
 49
 Beauchamp argues that "[a] motion for directed verdict or judgment of acquittal is in essence a challenge to the sufficiency of evidence, and is therefore reviewed for whether, 'after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' United States v. Lane, 883 F.2d 1484, 1494 (10th Cir.), cert. denied, 493 U.S. 1059 (1990)." (Appellant's Opening Brief at 21-22). We agree.
 
 
 50
 However, we cannot consider the sufficiency of the evidence when, as here, Beauchamp's record on appeal does not include a complete trial transcript. "Specifically, the failure to file a trial transcript precludes review of a conviction for sufficiency of the evidence." United States v. Vasquez, 985 F.2d 491, 495 (10th Cir.1993). See also Tenth Cir. R. 10.1.1.
 
 IV.
 
 51
 Beauchamp contends that the district court committed reversible error when it admitted evidence of his criminal record. Beauchamp acknowledges, citing United States v. Nicholson, 17 F.3d 1294, 1298 (10th Cir.1994), that our standard of review is for an abuse of discretion.
 
 
 52
 During trial, Drug Enforcement Agent Jeff Bryan (Bryan), who had been assigned to transport Beauchamp, testified relative to his first encounter with Beauchamp:
 
 
 53
 Q. [Mr. Lubeck, Assistant U.S. Attorney] As you entered [the room], he [Beauchamp] was in there alone to begin with?
 
 
 54
 A. [Bryan] Yes.
 
 
 55
 Q. Did you speak with him as you entered.
 
 
 56
 A. No.
 
 
 57
 Q. What did he say as you entered the room?
 
 
 58
 A. As we opened the door and walked in--
 
 
 59
 * * *
 
 
 60
 * * *
 
 
 61
 Q. (By Mr. Lubeck) Agent Bryan, I think I had asked you, as you entered the room Mr. Beauchamp was in, what did you say first off, anything?
 
 
 62
 A. No.
 
 
 63
 Q. What did he say?
 
 
 64
 A. When we walked into the room, he stood up out of his chair, he said fuck you guys, I'm not a rat or a snitch, I won't rat or snitch on anyone. And then following that he said---
 
 
 65
 * * *
 
 
 66
 * * *
 
 
 67
 Q. (By Mr. Lubeck) Agent Bryan, after Mr. Beauchamp made that statement did you say anything.
 
 
 68
 A. No.
 
 
 69
 Q. Did he continue?
 
 
 70
 A. Yes.
 
 
 71
 Q. What did he say?
 
 
 72
 A. He said you should have known by reading my record that I'm not a snitch.
 
 
 73
 Q. Did you end the conversation at that point.
 
 
 74
 A. Yes, we did.
 
 
 75
 (Appellant's Appendix, Tab 6 at 111-14).
 
 
 76
 Beauchamp argues that this testimony gave rise to the erroneous admission of evidence about his criminal record. He contends that the testimony about his criminal record was not admissible as evidence of other crimes, wrongs, or acts under Fed.R.Evid. 404(b) and that its admission constituted reversible error.
 
 
 77
 The government responds that Rule 404(b) is not applicable because there was no evidence admitted reflecting other crimes, wrongs, convictions, or a criminal record. The government argues that Beauchamp's challenge is directed to the admission of one word, "record," a neutral and innocuous word subject to multiple interpretations which was not repeated during the entire trial.
 
 
 78
 Where, as here, the error in admitting the challenged statement is "not of constitutional dimensions, the error is deemed harmless, unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." United States v. Flanagan, 34 F.3d 949, 955 (10th Cir.1994). "[W]e must perform our harmless error analysis by judging the evidence in the context of all of the evidence presented at trial." Id. However, we cannot undertake such an analysis without a trial transcript. Beauchamp's failure to include the complete trial transcript in his record on appeal precludes our review.
 
 V.
 
 79
 Beauchamp contends that the callous destruction of material, exculpatory portions of the videotape of the stop denied him due process of law.
 
 
 80
 Beauchamp moved to dismiss the indictment on the basis that the intentional or reckless destruction of portions of the videotape of the stop denied him due process. Beauchamp claimed that since portions of the destroyed videotape were "apparently" exclupatory and material, "the reason for its destruction was immaterial." (Appellant's Opening Brief at 40). Beauchamp also claimed, alternatively, that dismissal was proper because the videotape was destroyed in bad faith.
 
 
 81
 A motion to dismiss based on an outrageous governmental conduct defense is a question of law which we review de novo. United States v. Giles, 967 F.2d 382, 387 (10th Cir.1992). The standard for determining whether or not the failure to preserve potentially useful evidence constituted a denial of due process of law was set forth in Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988):
 
 
 82
 The Due Process Clause of the Fourteenth Amendment as interpreted in Brady [Brady v. Maryland, 373 U.S. 83 (1963) ], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material.... We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.
 
 
 83
 The district court relied upon and properly applied Arizona v. Youngblood in denying Beauchamp's motion to dismiss. We agree with the district court that:
 
 
 84
 The defendant contends the destruction of part of the tape was in bad faith. This argument is untenable. The tape was accidently played over by the camera and recorder in the officer's vehicle operating automatically due to a defect in the equipment. The officer did not act in bad faith in any fashion.... The circumstances here were neither intentional or deliberately indifferent to the preservation of evidence. Further, the lost evidence has not been demonstrated to be material to guilt or innocence or exculpatory in any manner.
 
 
 85
 (Appellant's Appendix, Tab 4 at 47).
 
 
 86
 We hold that there was no denial of due process.
 
 
 87
 AFFIRMED.
 
 
 
 *
 The Honorable Terry C. Kern, United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. Citation of unpublished orders and judgments is not favored. Nevertheless, an unpublished decision may be cited if it has persuasive value with respect to a material issue that has not been addressed in a published opinion and it would assist the court in its disposition. A copy of the decision must be attached to the brief or other document in which it is cited, or, if cited in oral argument, provided to the court and all other parties