**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 18 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　Plaintiff-Appellee,

v.

DAVID FUENTES, III,

　　Defendant-Appellant.

No. 98-3181

(D.C. No. 97-CR-10118)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **BRORBY**, and **KELLY**, Circuit Judges.[**]

　　Kansas Highway Trooper Jim Brockman arrested Defendant David Fuentes, III

after discovering approximately 400 pounds of marijuana in a false compartment in the

bed of the pick-up truck driven by Defendant.  Defendant was subsequently charged with

one count of possession with intent to distribute marijuana, in violation of 21 U.S.C.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this case. See Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

§ 841(a)(1). Defendant filed a motion to suppress the marijuana, which the district court denied following an evidentiary hearing. After the district court denied the motion to suppress, Defendant entered a conditional guilty plea. The court sentenced him to sixty months of imprisonment and four years of supervised release.

On appeal, Defendant argues that the district court erred by denying: (1) the motion to suppress evidence; and (2) a U.S.S.G. § 5C1.2 safety valve departure. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm in part, reverse in part and remand for further proceedings.

I.

On August 7, 1997, while patrolling the Kansas turnpike south of Emporia, Kansas with his drug-sniffing dog Lainey, Trooper Brockman observed a white Chevrolet pick-up truck following the vehicle in front of it too closely. Trooper Brockman also observed the pick-up changing lanes without signaling. Upon observing these traffic violations, Trooper Brockman activated his flashing lights and pulled in behind the pick-up. After continuing on for some distance, Defendant, the driver of the pick-up, gestured to the officer to indicate "who me?". The officer responded by motioning him to pull over. Defendant responded by pulling his vehicle to the shoulder and stopping.

Trooper Brockman approached the pick-up and told Defendant that he had stopped him for following too closely and failing to use turn signals. When asked who owned the vehicle, the Defendant indicated a friend named "Charlie" owned it. Trooper Brockman

2

then asked for proof of insurance, vehicle registration and a driver's license. Defendant was unable to produce proof of insurance, but produced a driver's license and vehicle registration. The registration indicated that "Omar Prieto Bencomo" was the registered owner of the vehicle. Trooper Brockman checked Defendant's license with the dispatcher and determined it was valid. Trooper Brockman summoned Defendant to his patrol car and issued warnings for following too closely and for failure to signal lane changes, and a citation for lack of insurance. Because Defendant had indicated that he had difficulty understanding English, Trooper Brockman explained the warnings and citation to Defendant using an English to Spanish translation booklet. Trooper Brockman read the statements in English and then directed Defendant to read the corresponding Spanish version. After explaining the citations, Trooper Brockman gave them to Defendant and returned his license and vehicle registration.

At this point, Trooper Brockman told Defendant to "hold on a minute" because he wanted to ask him some questions. He asked Defendant where he was going, where he was coming from, and the purpose of his trip. Defendant responded to the questions. Trooper Brockman then asked Defendant for permission to search the truck, giving Defendant a Spanish-language written consent form. Defendant appeared to read the form and said "yea." Defendant signed the form.

Trooper Brockman proceeded to briefly examine the cab of the truck, looking under the seat and in a small duffle bag. He then looked in the bed of the truck and

3

noticed some shiny bolts sticking through the fender. He tapped on the bottom of the bed and couldn't feel any vibrations. He noticed that the truck bed appeared thicker than a normal bed, leading him to believe the bed contained a hidden compartment. After using his knife to expose a seam in the truck bed, he brought his drug-sniffing dog Lainey to the truck and gave her the search command. She immediately responded by scratching at the bed of the truck. Trooper Brockman pried open the seam where Lainey alerted and found bundles of marijuana. As a result, he placed Defendant under arrest.

II.

When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). We accept the district court's factual findings unless those findings are clearly erroneous. United States v. Villa-Chapparo, 115 F.3d 797, 801 (10th Cir. 1997). The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. Id. Keeping in mind that the burden is on the defendant to prove that the challenged seizure was illegal under the Fourth Amendment, United States v. Ludwig, 10 F.3d 1523, 1526 (10th Cir. 1993), the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo. Hunnicutt, 135 F.3d at 1348.

A.

4

As an initial matter we must determine whether the government correctly asserts that Defendant cannot challenge the search of the pick-up. In order to challenge the search on Fourth Amendment grounds, Defendant must demonstrate that he had an "expectation of privacy in the place searched, and that his expectation is reasonable." Minnesota v. Carter, 119 S.Ct. 469, 472 (1998).[1] An expectation of privacy is reasonable if it arises from a source "outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Rakas v. Illinois, 439 U.S. 128, 143-44 (1978). The Fourth Amendment protects people from unreasonable searches of their "persons, houses, papers, and effects." U.S. Const. amend. IV. Fourth Amendment protection is "a personal right that must be invoked by an individual." Carter, 119 S.Ct. at 473. The burden is on Defendant to show that he had such an expectation. See United States v. Conway, 73 F.3d 975, 979 (10th Cir. 1995).

Defendant failed to meet this burden. Whether a driver's privacy interest in a vehicle is reasonable "depends on the driver's lawful possession of the vehicle." United

---

[1] Although the parties and many Tenth Circuit opinions characterize this as a question of "standing," the Supreme Court expressly rejected a standing analysis in Rakas v. Illinois, 439 U.S. 128, 143 (1978). "In order to determine whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" Minnesota v. Carter, 119 S.Ct. 469, 472 (1998) (quoting Rakas, 439 U.S. at 140). Although we have applied the appropriate standard in our previous opinions, on many occasions we have labeled it "standing."

States v. Soto, 988 F.2d 1548, 1552 (10th Cir. 1993). Mere possession of the vehicle is insufficient to show a reasonable expectation of privacy. United State v. Christian, 43 F.3d 527, 530 (10th Cir. 1994). We have found a reasonable expectation of privacy, however, where the driver "claimed to have borrowed the car from the rightful owner and had produced a registration bearing the owner's name." United States v. Angulo-Fernandez, 53 F.3d 1177 (10th Cir. 1995); Soto, 988 F.2d at 1553.

When asked by Trooper Brockman where he obtained the truck, Defendant stated from a friend named "Charlie." Defendant could not provide "Charlie's" last name. Defendant produced the vehicle's registration bearing the name of another individual, "Omar Prieto Bencomo." This evidence fails to show that Defendant obtained the truck from someone who had a lawful right to loan it to him. Defendant's statement that someone named "Charlie" loaned it to him is insufficient because Defendant introduced no evidence regarding "Charlie's" lawful possession of the truck. See Soto, 988 U.S. at 1552 (citing United States v. Rascon, 922 F.2d 584 (10th Cir.1990)). Consequently, Defendant had no reasonable expectation of privacy in the truck and cannot challenge the search. See United States v. Beauchamp, 1996 WL 5079 at *7 (Jan. 5, 1996, 10th Cir.) (unpublished).

Defendant does, however, have standing to challenge his detention. See United States v. Villa-Chaparro, 115 F.3d 797, 800 n.1 (10th Cir. 1997); see also United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996). If the evidence found in the truck was the

6

fruit of an unlawful detention, then it must be suppressed under the fruit of the poisonous tree doctrine. Villa-Chaparro, 115 F.3d at 800 n.1. Thus, we must determine: (1) whether Defendant was unlawfully detained; and (2) whether the discovered marijuana was the fruit of that unlawful detention. Shareef, 100 F.3d at 1500. "Only if both of these questions are answered in the affirmative, will the physical evidence" found in the truck be suppressed. Id.

B.

A routine traffic stop constitutes an investigative detention and is judged under the principles announced in Terry v. Ohio, 392 U.S. 1, 19-20 (1968). See United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997). Under Terry, we determine first whether the stop of the vehicle was justified at its inception. 392 U.S. at 20. In this case, Defendant does not contend that Trooper Brockman's initial stop of the truck was unreasonable. Thus, we proceed to the second prong of Terry to determine whether the trooper's conduct during the detention was reasonably related in scope to the circumstances which justified the initial interference. See Wood, 106 F.3d at 945.

An investigative detention must last no longer than necessary to accomplish the purpose of the stop, and its scope must be "carefully tailored" to the underlying justification for the interference. Id. During the stop, the trooper may detain the driver as long as "reasonably necessary" to examine documentation and run computer verifications to determine whether the driver has a valid license and is entitled to operate

the vehicle.  Id.  Once a traffic citation or warning is issued and the officer has determined the validity of the driver's license and his right to operate the vehicle, the driver "must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." United States v. Sandoval, 29 F.3d 537, 540 (10th Cir. 1994).  Additional questioning of the driver is permissible only if: (1) during the traffic stop, the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity; or (2) the driver voluntarily consents to the additional questioning.  Id.

In this case, the government argues that the officer acquired a reasonable suspicion of criminal activity justifying the continued detention.  In the alternative, the government argues that Defendant voluntarily consented to the continued detention.  We conclude that the circumstances justified Defendant's continued detention following the initial traffic stop.  Because we conclude that Trooper Brockman possessed the requisite reasonable suspicion to detain Defendant, we need not address the issue of Defendant's voluntary consent to the detention.

After observing Defendant violate two traffic laws, Trooper Brockman activated his flashing lights to signal to Defendant to stop the vehicle.  Trooper Brockman followed Defendant for "quite a distance" with his lights flashing while Defendant ignored him.  Only after the trooper motioned for Defendant to pull over, did he stop the vehicle.  A driver's failure to "promptly stop" a vehicle in response to flashing police

8

lights is a factor supporting reasonable suspicion. Villa-Chaparro, 115 F.3d at 802.

The fact that Defendant did not own the vehicle he was driving and could not identify its registered owner also supports Trooper Brockman's reasonable suspicion of criminal activity. See id. When asked who owned the vehicle, Defendant hesitated and then stated a friend named "Charlie." Defendant never provided "Charlie's" last name and the registered owner's name was "Omar Prieto Bencomo." The failure of a driver to "offer proof that he is entitled to operate a vehicle, combined with inconsistent or incomplete information about ownership of the vehicle . . . will generally give rise to a reasonable suspicion justifying further questioning." United States v. Gonzalez-Lerma, 14 F.3d 1479, 1484 (10th Cir. 1994).

Finally, Trooper Brockman testified that Defendant was "very nervous" and "very excitable" during the traffic stop. He said Defendant was "doing a lot of hand movements and gestures, continually talking or attempting to converse with me," and breathing very rapidly. Although Defendant's nervousness is not alone sufficient to support a finding of reasonable suspicion, it has some relevance. United States v. Soto-Cervantes, 138 F.3d 1319, 1324 (10th Cir. 1998). Considering Defendant's extreme nervousness in tandem with Defendant's reluctance to stop his vehicle and the inconsistent information he gave regarding ownership of the vehicle, we find that Trooper Brockman possessed the requisite reasonable suspicion to detain Defendant for further questioning.

9

Having determined that Trooper Brockman's detention of Defendant was lawful, our inquiry ends. Defendant cannot independently challenge the resulting search of the truck because, as we have already held, he lacked a reasonable expectation of privacy in it. Where Defendant lacks "standing" to directly challenge a search, the evidence found during that search must be suppressed *only* if the detention itself was unlawful. See Shareef, 100 F.3d at 1500. In this case, the marijuana was discovered as a result of a lawful detention. Consequently, the district court properly denied the motion to suppress.

### III.

Defendant next argues that the district court erred by refusing to apply the safety valve provision of U.S.S.G. § 5C1.2 at sentencing. See also 18 U.S.C. § 3553(f). In this case, under the sentencing guidelines, Defendant's sentencing range would have been forty-six to fifty-seven months. Under 21 U.S.C. § 841(a)(1)(B), however, the minimum term of imprisonment was sixty months. Thus, if the district court had applied the safety valve provision, Defendant would have received a shorter sentence. We review the district court's decision whether Defendant is eligible for safety valve relief for clear error. United States v. Roman-Zarate, 115 F.3d 778, 784 (10th Cir. 1997). Defendant bears the burden of showing, by a preponderance of the evidence, that the safety valve provision applies. United States v. Verners, 103 F.3d 108, 110 (10th Cir. 1996). If Defendant meets the requirements of § 5C1.2, application of the safety valve provision is

10

mandatory. Id. at 110 n.3.

The safety valve provision allows a district court to avoid imposing the statutory mandatory minimum sentence if a defendant meets five requirements. Because the district court held that Defendant met the first four requirements, the only issue in this case is whether the "defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense." U.S.S.G. § 5C1.2(5). The district court found that Defendant had not done so and refused to apply the provision.

In order to comply with subsection 5 of § 5C1.2, Defendant must explain to the government his involvement in the crime and also share everything he knows about the involvement of other participants. Verners, 103 F.3d at 110. The fact that the provided information is not useful to the government, or that the government is already aware of the information does not preclude Defendant from complying with subsection 5. See U.S.S.G. § 5C1.2(5).

In this case, Defendant submitted to the government a written statement, translated into English by counsel, which described his participation in the offense. Defendant also talked briefly about the circumstances of the crime with the prosecutor prior to sentencing. In the written statement, Defendant describes meeting "Charlie" at a bar in Cactus, Texas, befriending him, and eventually being asked to do "Charlie" a favor by driving a truck with 150 pounds of marijuana to Topeka, Kansas. Defendant stated that "Charlie" told him to meet him at a store on the outskirts of Dumas, Texas on August 6,

11

1997, at 10 or 11 p.m. where "Charlie" would give him the truck and money for gasoline. When he arrived in Topeka, some men would meet him at the first turnpike exit to retrieve the marijuana. The men would put him on a bus for the return trip and Defendant would receive $1,000 from "Charlie" the next time he met up with him in the Cactus, Texas bar. Defendant explained that when he asked "Charlie" questions about the delivery, he was told not to ask any more questions and that he was being told only what was "necessary."

After reviewing Defendant's statement and listening to counsel's arguments at the sentencing hearing, the district court concluded that Defendant had "more information than he has provided . . . . I think he has additional information that he simply hasn't provided, and as a result of that, I'm not going to give him the benefit of the safety valve in this case." The district court made no factual findings on the issue.

In light of this record, we conclude that the district court clearly erred by not applying the safety valve. This decision is simply "without factual support in the record." See United States v. Beaulieu, 893 F.2d 1177, 1182 (10th Cir. 1990). Defendant provided the government with a statement explaining what he had done and what he knew about other individuals involved in the transportation of the marijuana. The statement also explained why he lacked more detailed information about the drug deal. Defendant discussed the statement with the government. Defendant told the court at sentencing that "[t]he letter that I sent is all the information that I have. I don't have any other

12

information. If I had more information, I would happily give it all to you, but that's all that I have."

The government offered no evidence that the information was incorrect or incomplete. The government merely argued at sentencing that the information "gives the United States no help whatsoever in determining who may be at the root of the distribution of marijuana in this case." The helpfulness of the information is irrelevant. See U.S.S.G. § 5C1.2(5). The government also stated that Defendant "simply hasn't provided the government with all the information he has," but offered no evidence to support this statement.

We find no evidence in the record showing that Defendant's statement was incomplete or false. The cases upholding a district court's decision not to apply the "safety valve" provision all contain *some* evidence tending to demonstrate that the defendant had not truthfully or completely provided information. See Roman-Zarate, 115 F.3d at 785 (defendant justified his limited cooperation on ground that complete disclosure would endanger his life); see United States v. Myers, 106 F.3d 936, 941 (10th Cir. 1997) (defendant refused to provide information about other participants because he did not think the information would be helpful); see Verners, 103 F.3d at 111 (defendant's inconsistent statements cast doubt upon truthfulness of information provided to government); see United States v. Ramirez-Samaniego, 1998 WL 406584 at *2 (10th Cir. July 13, 1998) (unpublished) (expert testimony at sentencing demonstrated that

defendant may have been untruthful because it was unlikely that drug dealers would have entrusted defendant with valuable contraband without giving him more information). Such evidence is lacking here. Defendant claimed that he shared everything he knew. Granted, the information was not detailed enough to help the government, but that does not determine whether § 5C1.2 applies. Accordingly, the district court erred by not applying § 5C1.2. Consequently, we reverse and remand for resentencing consistent with this opinion.

## IV. Conclusion

For the reasons set forth above, we AFFIRM IN PART, REVERSE IN PART, and REMAND for resentencing consistent with this order and judgment.


Entered for the Court,


Bobby R. Baldock
Circuit Judge

14