F I L E D
United States Court of Appeals
Tenth Circuit

JUN 9 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CARLOS SAN ROMAN-ZARATE,

      Defendant-Appellant.

No. 96-6067

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CR-95-162-R)

Jack Fisher, Edmond, Oklahoma, for Defendant-Appellant.

M. Jay Farber, Assistant U.S. Attorney (Patrick M. Ryan, United States Attorney, and
Kim Kakish, Assistant U.S. Attorney, on the briefs), Oklahoma City, Oklahoma, for
Plaintiff-Appellee.

Before **PORFILIO**, **LUCERO** and **MURPHY**, Circuit Judges.

**PORFILIO**, Circuit Judge.

Defendant Carlos Roman-Zarate appeals his sixty-month sentence imposed following a plea of guilty to unlawful possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Mr. Zarate challenges the district court's sentencing calculation, arguing the court improperly considered a post-arrest admission in determining his base offense level and erroneously applied the mandatory minimum sentence. We affirm.

In October 1995, Drug Enforcement Administration (DEA) agents in Oklahoma City initiated a drug delivery between Mr. Zarate and a federal informant. When Mr. Zarate arrived at the designated meeting place, he was arrested and nine ounces of cocaine was seized from his vehicle. The three agents overseeing the operation separated following Mr. Zarate's arrest. Two transported Mr. Zarate to DEA headquarters while the third, Agent Michael Bakios, went to the United States Attorney's office.

Upon his arrival at DEA headquarters, Mr. Zarate was escorted to a conference room and advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). He told agents he wished to speak with an attorney. The agents did not question or speak further with Mr. Zarate except to request administrative information. Approximately thirty minutes later, Agent Bakios arrived and asked the other agents whether Mr. Zarate was cooperating. The agents replied that Mr. Zarate had requested an attorney. After a moment, Mr. Zarate asked what Agent Bakios had meant by cooperating, and the agent explained he wondered if Mr. Zarate "were going to help [himself] out" by assisting in

the investigation. Mr. Zarate attempted to clarify the agent's explanation, but Agent Bakios advised that any further communication was conditioned on Mr. Zarate's waiver of his right to counsel. Mr. Zarate was told the agents could not guarantee leniency, but that cooperation could help him. Agent Bakios then reread the *Miranda* warnings, and Mr. Zarate agreed to speak to agents without an attorney.

Mr. Zarate revealed details of prior drug transactions including his involvement in the purchase and distribution of three kilograms of cocaine during the previous three months and the name of a source in Texas. After Mr. Zarate offered to participate in an undercover buy, the agents transported him to the United States Attorney's office to discuss further cooperation. He confirmed his earlier statements but refused to provide the government with the names of his courier or local contacts. Concluding Mr. Zarate was not cooperating, Agent Bakios and the Assistant United States Attorney terminated the interview.

Mr. Zarate entered a plea of guilty to possession with intent to distribute the nine ounces of cocaine seized at the time of his arrest. Based on Mr. Zarate's prior disclosure that he had distributed three kilograms of cocaine, the district court increased his base offense level five points.[1] The district court declined to depart from the mandatory

---

[1] Under the United States Sentencing Guidelines, the primary determinant of the base offense level for drug-related offenses is the quantity of drugs involved in the offense. U.S.S.G. § 2D1.1(a)(3). In determining the quantity of drugs for computing the base offense level, guidelines §§ 1B1.3(a)(2) and 3D1.2(d) require consideration of "all such acts and omissions that were part of the same course of conduct or common scheme

minimum sentence as allowed by 18 U.S.C. § 3553(f), concluding Mr. Zarate had not fully cooperated with the government.

## I.

Mr. Zarate contends the district court was prohibited from using his admission concerning the three kilograms of cocaine in determining the applicable sentence range because (1) the statements were made in the course of plea discussions pursuant to Fed. R. Crim. P. 11(e)(6), (2) the statements were made with the understanding they would not be used against Mr. Zarate pursuant to U.S.S.G. § 1B1.8, and (3) the statements were obtained in violation of Mr. Zarate's Fifth Amendment right to counsel and were involuntary.

First, Mr. Zarate argues his conversation with DEA agents, in which he disclosed information in exchange for possible leniency, constituted plea discussions within the meaning of Rule 11(e)(6). Fed. R. Crim. P. 11(e)(6) provides:

> Inadmissibility of Pleas, Plea Discussions, and Related Statements. Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>     . . . .
> (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

or plan as the offense of conviction."

- 4 -

Interpretation of the Federal Rules of Criminal Procedure is a legal issue subject to de novo review. *United States v. Maher*, 919 F.2d 1482, 1485 (10th Cir. 1990). In reviewing this issue, however, we find we need not reach the merits of Mr. Zarate's argument. This court has held that Rule 11(e)(6) does not apply to sentencing proceedings. *United States v. Medina-Estrada*, 81 F.3d 981, 986 (10th Cir. 1996); *United States v. Ruminer*, 786 F.2d 381, 387 (10th Cir. 1986). Accordingly, regardless of whether Mr. Zarate's conversation with the agents qualified as plea discussions, his statements were properly considered by the district court at sentencing.

Next, Mr. Zarate maintains the DEA agents' promise that cooperation would be helpful to him amounts to an agreement under U.S.S.G. § 1B1.8 that his statements would not be used against him. We review de novo the interpretation of the sentencing guidelines. *United States v. Pinedo-Montoya*, 966 F.2d 591, 595 (10th Cir. 1992).

Section 1B1.8 of the Guidelines provides:

(a) Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

We are unpersuaded that § 1B1.8 constrained the government's use of Mr. Zarate's statements.

Section 1B1.8 applies only where two separate agreements have been negotiated: (1) the defendant agrees to cooperate with the government by providing the requisite

information, and (2) the government agrees not to use that information against the defendant. *United States v. Evans*, 985 F.2d 497, 499 (10th Cir. 1993). In *Evans*, defendant was advised of his rights under *Miranda*, then informed that the extent of his cooperation would be relayed to the prosecutor. The court rejected defendant's argument that his subsequent statements were protected by § 1B1.8, concluding that although defendant may have agreed to cooperate, the agent's offer to notify the prosecutor could not be interpreted as an agreement to refrain from using defendant's incriminating statements against him. *Id*.

Similar facts were presented in *United States v. Rutledge*, 900 F.2d 1127 (7th Cir. 1990), where the arresting officer told defendant "his cooperation would be helpful." The court reasoned the officer's assurance was not an agreement that incriminating statements would not be used against the defendant, particularly since an assurance of that kind would have been inconsistent with the *Miranda* warnings the defendant had just received. *Id*. at 1131.

Mr. Zarate's attempt to use § 1B1.8 as a shield fails for the same reasons. The DEA agents may have promised that Mr. Zarate's cooperation would be helpful to him, but they did not promise that incriminating statements he made in the course of cooperation would not be used against him. Furthermore, just after urging him to cooperate and just prior to being provided with the incriminating information, agents

readvised Mr. Zarate of his *Miranda* rights. Mr. Zarate had fair and timely warning that agents planned to use his statements against him.

Finally, Mr. Zarate challenges the district court's use of his statements under the Fifth Amendment on two grounds: first, that he did not knowingly and voluntarily waive his *Miranda* rights, and second, that his statements were made involuntarily. There is no question that Mr. Zarate was advised of his *Miranda* rights, understood those rights, and invoked them by requesting the assistance of an attorney. Mr. Zarate argues, however, his waiver was ineffective because agents subjected him to further interrogation after he requested the assistance of counsel.

If a defendant talks to officers after invoking his right to counsel, the government bears the burden of proving by a preponderance of the evidence the waiver of the right was voluntary. *United States v. Toro-Pelaez*, 107 F.3d 819, 825 (10th Cir. 1997). A waiver is voluntary if the totality of the circumstances demonstrates (1) the waiver was a product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving. *Id*.; *United States v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir. 1996). The determination of whether a valid waiver of Fifth Amendment rights has occurred is a question of law which we review de novo; subsidiary factual determinations are reviewed under the clearly erroneous standard. *Toro-Pelaez*, 107 F.3d at 826.

The Supreme Court mandates that once a defendant has invoked his right to an attorney, all questioning by law enforcement officers must cease until an attorney is present. *Miranda*, 384 U.S. at 474. While a defendant who has exercised his right to be represented by counsel may subsequently waive that right, "a valid waiver ... cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *United States v. Giles*, 967 F.2d 382, 385 (10th Cir. 1992) (quoting *Edwards v. Arizona*, 451 U.S. 477, 484 (1981)). A defendant who has invoked his right to counsel may not be subject to further interrogation unless he initiates the communication. *Id*. Mr. Zarate argues Agent Bakios's initial question to the other agents concerning Mr. Zarate's decision to cooperate constituted interrogation after invocation of his rights under *Miranda*. We disagree.

The term "interrogation" refers to "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Agent Bakios's question, posed to the other agents to determine whether Mr. Zarate had invoked his right to counsel, does not fall within the Court's definition of interrogation. Instead, the agent's question seems quite consistent with conduct attendant to arrest and custody. *See United States v. Comosona*, 848 F.2d 1110, 1112-13 (10th Cir. 1988) (officer's suggestion to defendant to call him collect to discuss incident constituted conduct normally attendant to arrest). The agents did not

interrogate Mr. Zarate. Mr. Zarate initiated communication with Agent Bakios who simply responded to his questions. *See United States v. Johnson*, 42 F.3d 1312, 1318 (10th Cir. 1994) (defendant who was informed of probable sentences and benefits of cooperation and who then invoked right to counsel initiated contact with officers by asking some time later "what exactly can I do to help myself out?"); *United States v. Trimble*, 986 F.2d 394, 401 (10th Cir. 1993) (defendant's inquiry to federal agents about potential penalties constituted initiation of communication and effective waiver of right to counsel).

Having determined Mr. Zarate was not subject to interrogation in violation of *Miranda*, we further conclude no evidence suggests his waiver was otherwise ineffective. Mr. Zarate has not alleged, and nothing in the record indicates, that agents coerced or intimidated him into waiving his rights. After evaluating the information received from Agent Bakios, Mr. Zarate told the agents he wished to speak to them without an attorney. That Agent Bakios noted the possible benefits of cooperation does not compel a finding that Mr. Zarate was deceived or lacked awareness of the consequences of his waiver. *See Toro-Pelaez*, 107 F.3d at 826. We hold the government has met its burden of establishing Mr. Zarate's incriminating statements were the product of a knowing, intelligent, and voluntary waiver of his right to counsel.

Mr. Zarate's exclusive reliance on *United States v. Walton*, 10 F.3d 1024 (3d Cir. 1993), is misplaced. *Walton* involved the admissibility of statements made at the time

defendant had no reason to believe he was a suspect, on a park bench, to a friend on the police force who, rather than advising defendant of his *Miranda* rights, gave defendant "his word" the statements would not be used. *Id*. at 1030. Under the totality of the circumstances, the Third Circuit concluded defendant had been "deprived of the ability to make an intelligent choice between exercising and waiving that privilege." *Id*. at 1031. Since Mr. Zarate was arrested, taken to the DEA office, informed of his *Miranda* rights, and advised that incriminating statements would be used against him, his situation bears no resemblance to the facts presented in *Walton*, and that court's reasoning cannot guide us to a different determination.

Although we conclude Mr. Zarate's *Miranda* rights were not violated, our Fifth Amendment inquiry is not over because Mr. Zarate also claims his statements were made involuntarily. Mr. Zarate contends his ability to make a rational choice to disclose incriminating information was destroyed by the agents' intimations that any cooperation would benefit him. A determination of voluntariness is based on the totality of the circumstances, *United States v. Glover*, 104 F.3d 1570, 1579 (10th Cir. 1997), including the characteristics of the defendant and the details of the interrogation. *United States v. Erekson*, 70 F.3d 1153, 1157 (10th Cir. 1995); *United States v. Lux*, 905 F.2d 1379, 1382 (10th Cir. 1990). When statements are challenged as involuntary, this court defers to the district court's findings of fact unless clearly erroneous, but makes an independent determination of the ultimate issue of voluntariness. *Glover*, 104 F.3d at 1579-80.

Based upon four key factors, we conclude Mr. Zarate's statements were voluntarily given. First, Mr. Zarate was advised of his *Miranda* rights and apparently understood those rights well enough to make an initial decision to assert them. *See Glover*, 104 F.3d at 1579 (whether defendant received *Miranda* warnings is factor in determining voluntariness); *United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993) (same).

Second, Mr. Zarate was not subject to prolonged detention or interrogation. Even under Mr. Zarate's version of events, the invocation of his rights terminated police questioning, at least for the half hour before Agent Bakios arrived at DEA headquarters -- and then, only ten or fifteen minutes transpired before Mr. Zarate made incriminating statements. *See Glover*, 104 F.3d at 1580 (twenty-minute conversation was not excessively long period of detention).

Third, there is no evidence suggesting Mr. Zarate was unusually susceptible to coercion because of age, lack of education, or intelligence. Mr. Zarate is a business owner who participates in complex transactions involving the operation of his restaurants. He clearly had no difficulty understanding his conversation with the agents.

Fourth, Mr. Zarate's decision to cooperate in exchange for possible leniency seems, under the circumstances, to have been the result of calculation not coercion. Agent Bakios testified Mr. Zarate's willingness to cooperate was prompted by an interest in avoiding jail and continuing his business operations. That a defendant balanced personal considerations with the possible cost of disclosure does not render his

subsequent statements involuntary.  *See Glover*, 104 F.3d at 1580 (defendant's decision to cooperate resulted from "personal psychological pressures [that] do not amount to official coercion rendering a confession involuntary"); *Rutledge*, 900 F.2d at 1130 (that defendant forced to weigh costs and benefits of disclosure does not constitute police coercion or misconduct).

Mr. Zarate's assertion that Agent Bakios's representations of leniency transformed his statements into involuntary utterances is simply unpersuasive.  Three agents testified the only agreement reached was to make the extent of Mr. Zarate's cooperation known to the United States Attorney.  We rejected defendant's identical argument in *United States v. Lewis*, 24 F.3d 79 (10th Cir. 1994), concluding "[t]hat type of limited assurance does not taint ensuing statements as involuntary."  *Id*. at 82.  *See Lux*, 905 F.2d at 1382 n.2 (where defendant properly informed United States Attorney was only official with control over plea arrangements, officer's implied promise of leniency did not make defendant's confession involuntary); *Rutledge*, 900 F.2d at 1130 (holding that police manipulation does not render ensuing statements involuntary unless officers "magnify those fears, uncertainties, and so forth to the point where rational decision becomes impossible").  Though Agent Bakios appears to have exercised his right to manipulate the encounter with Mr. Zarate, his actions were not so extraordinary as to have deprived Mr. Zarate of

his ability to make a rational choice. Mr. Zarate's statements were the product of his own free will.[2]

## II.

Mr. Zarate also challenges the district court's imposition of the mandatory minimum sentence for his offense, arguing his cooperation with the government earned him a downward departure from the sentencing guidelines.

Title 18 U.S.C. § 3553(f) requires the district court to sentence a defendant according to the sentencing guidelines, rather than imposing the statutory mandatory minimum sentence, when the following conditions have been satisfied:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a

---

[2] Because we conclude no violation of Mr. Zarate's Fifth Amendment rights occurred, we need not reach the question whether illegally-obtained statements would be admissible at his sentencing hearing under *United States v. Jessup*, 966 F.2d 1354 (10th Cir. 1992).

determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).[3] *See also* **United States v. Acosta-Olivas**, 71 F.3d 375, 377 (10th Cir. 1995).

At sentencing, the district court found that in refusing to provide the government with all of the details of his drug transactions, Mr. Zarate had failed to comply with the fifth requirement of § 3553(f). Consequently, the court declined to depart from the guideline range. The district court's specific conclusion the defendant is or is not eligible for relief under § 3553(f) is reviewed for clear error. **Acosta-Olivas**, 71 F.3d at 378 n.3; **United States v. Rodriguez**, 69 F.3d 136, 144 (7th Cir. 1995).

Section 3553(f) requires disclosure of "everything [defendant] knows about his own actions and those of his co-conspirators." **Acosta-Olivas**, 71 F.3d at 378. *See* **Rodriguez**, 69 F.3d at 143 (affirming district court's conclusion defendant was ineligible for § 3553(f) reduction because "he produced no information concerning the offense"); **United States v. Wrenn**, 66 F.3d 1, 3 (1st Cir. 1995) (affirming district court's denial of § 3553(f) relief because defendant "did not provide the government with all of the information and evidence he had concerning the very crime to which he pleaded guilty ... [and] supplied nary a name to the government").

---

[3] The language of § 3553(f) has been adopted verbatim in the United States Sentencing Commission Guidelines Manual at § 5C1.2.

Here, three agents testified at the sentencing hearing that Mr. Zarate had failed to fully disclose particular details of his drug operation including the name of his courier and of his contact in Oklahoma City. The agents stated that based on their experience they believed Mr. Zarate had lied or been purposefully evasive in response to certain inquiries.

Mr. Zarate defends his limited cooperation on the ground that complete disclosure would have endangered his life, arguing a statute requiring that level of sacrifice contravenes public policy. He cites no authority for this proposition, and we have found none in the case law of this or any other circuit. Indeed, acceptance of Mr. Zarate's argument would seem to contravene the purpose of the statute, not public policy. If Mr. Zarate chooses not to divulge names of his drug couriers or contacts because he suspects his colleagues-in-crime may be less than supportive of his decision, he is entitled to remain silent; but, he is no longer entitled to special treatment from the district court. We conclude the district court's determination that Mr. Zarate was ineligible for a sentence reduction under § 3553 is not clearly erroneous.

For the reasons set forth above, we **AFFIRM** the district court's judgment.