**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 4 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

FRANCISCO JAVIER TAPIA-
MATOSIAN,

    Defendant-Appellant.

No. 98-2036
(District of New Mexico)
(D.C. No. CR-97-505-JC)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **EBEL,** and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9. The court

therefore honors the parties' requests and orders the case submitted without oral

argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I. BACKGROUND

Francisco Javier Tapia-Matosian pleaded guilty to illegally importing five or more kilograms of cocaine in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(1)(B)(ii). The district court sentenced Tapia-Matosian to a 135-month term of imprisonment. Tapia-Matosian appeals, claiming the district court erred in: (1) denying Tapia-Matosian a two-point reduction in his base offense level based on his allegedly minor role in the offense pursuant to U.S.S.G. § 3B1.2; and (2) concluding that Tapia-Matosian did not satisfy all of the requirements necessary to invoke the "safety valve" set out in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. This court exercises jurisdiction pursuant to 28 U.S.C. § 1292 and 18 U.S.C. § 3742 and **affirms**.

On July 27, 1997, Tapia-Matosian entered the United States from Mexico. At the border, a customs inspector asked Tapia-Matosian if he had made any purchases. Tapia-Matosian responded in the negative and instead indicated that he had crossed to border to deliver his mother to a bus station. During this initial conversation, the customs inspector noticed that although there was a spare tire compartment behind the driver's seat in the cab of the vehicle, Tapia-Matosian's spare tire was sitting in the bed of the truck. The customs inspector referred Tapia-Matosian to a secondary inspection.

During the secondary inspection, Tapia-Matosian initially informed the inspectors that he lived in Deming, New Mexico. When it was revealed, however, that Tapia-Matosian had a California driver's license, Tapia-Matosian changed his story and indicated that he was only visiting New Mexico. A search of the vehicle revealed approximately eighty kilograms of cocaine. A further pat-down search of Tapia-Matosian revealed a hand-written map and a California phone number. After he was transported to the United States Customs Office for processing, agents found a motel room key among Tapia-Matosian's possessions. A search of the room revealed a suitcase belonging to Tapia-Matosian containing approximately $800 in ten dollar bills.

A grand jury indicted Tapia-Matosian on one count of importing cocaine in violation of 18 U.S.C. §§ 952(a), 960(a), and 960(b)(1)(B)(ii) and one count of possession of cocaine with intent to distribute in violation of § 841. Tapia-Matosian entered into a plea agreement with the United States and pleaded guilty to the importation count of the indictment. The parties stipulated, based on the amount of cocaine seized from his vehicle, that Tapia-Matosian's offense conduct resulted in a base offense level of thirty six.    *See* U.S.S.G. § 2D1.1(c)(2) (establishing a base offense level of thirty six where the drug quantity involved "[a]t lease 50 KG but less than 150 KG of cocaine"). The parties further stipulated that Tapia-Matosian had demonstrated acceptance of responsibility for

his criminal conduct and was, therefore, entitled to a three level reduction in his base offense level pursuant to U.S.S.G. § 3E1.1. Finally, the parties stipulated that should Tapia-Matosian qualify for relief under the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, his resultant base offense level would be thirty one, with a guideline imprisonment range of 108 to 135 months.

The United States Probation Office prepared a presentence report ("PSR") which concluded Tapia-Matosian had met the criteria necessary to gain relief under the statutory and guidelines safety valve provisions. In response, the United States filed an objection to the conclusion in the PSR that Tapia-Matosian was entitled to safety valve relief. The United States conceded Tapia-Matosian had met with a federal agent and provided information; it asserted, however, that the information was neither truthful nor complete. Shortly thereafter, Tapia-Matosian filed a sentencing memorandum requesting, pursuant to U.S.S.G. § 3B1.2, a two-level reduction in his base offense level for playing a minor role in the drug-importation scheme.

On January 27, 1998, Tapia-Matosian appeared for sentencing. The district court concluded Tapia-Matosian had not met his burden of establishing his minor role and, therefore, denied his request for a downward departure pursuant to U.S.S.G. § 3B1.2. The district court further concluded that Tapia-Matosian had failed to provide the government truthful and complete information

-4-

concerning the drug-importation scheme.  Accordingly, the district court denied Tapia-Matosian relief under the statutory and guideline safety valve provisions.

## II. ANALYSIS

*A.  Minor Role Reduction*

On appeal, Tapia-Matosian contends the district court erred in declining to decrease his offense level under U.S.S.G. § 3B1.2 based on his minor role in the offense.  The district court's conclusion that Tapia-Matosian was not a minor participant in the crime is a finding of fact which this court reviews for clear error.  *United States v. Ballard*, 16 F.3d 1110, 1114 (10th Cir. 1994).  This court also gives due deference to the district court's application of the Sentencing Guidelines.  *See id.*  "Under U.S.S.G. § 3B1.2, it is the defendant's burden to establish by a preponderance of the evidence that he or she is entitled to an offense reduction."  *United States v. Ayers*, 84 F.3d 382, 383 (10th Cir. 1996).

In his sentencing memorandum and at the sentencing hearing, Tapia-Matosian argued he was entitled to a minor-participant downward adjustment because he was an unsophisticated drug courier recruited at the border.  The district court denied the adjustment, concluding as follows: (1) the very limited nature of the information provided by Tapia-Matosian about his criminal behavior failed to prove Tapia-Matosian's actions were minor compared to other

alleged members of the importation conspiracy; and (2) it was unlikely that the large amount of cocaine at issue here would have been entrusted to someone who had just been recruited at the border.

Tapia-Matosian does not directly attack as clearly erroneous the district court's factual finding that Tapia-Matosian failed to prove his entitlement to a § 3B1.2(b) downward adjustment. Instead, Tapia-Matosian argues the district court's denial of the adjustment was based on the following two errors of law: (1) the district court denied the adjustment on the grounds Tapia-Matosian's conduct was not minor when compared with that of other hypothetical couriers; and (2) the district court denied the adjustment on the grounds that Tapia-Matosian was the sole offender arrested and prosecuted. Each of these contentions is completely without merit.

During the sentencing hearing, Tapia-Matosian argued that the relatively unsophisticated way in which he smuggled the cocaine across the border supported a minor-participant adjustment. In response, the district court noted as follows:

> THE COURT: 78 kilograms of cocaine indicates some sophistication. That's a fairly significant amount of cocaine.
>
> . . . .
>
> THE COURT: My point, it's not a backpack of marijuana. This is a fairly significant amount of cocaine. It's a valuable

-6-

commodity. It's not being entrusted to someone who has been recruited at the border station.

According to Tapia-Matosian, these statements evince an intention on the part of the district court to deny the sentencing adjustment because Tapia-Matosian's conduct was not minor compared with hypothetical drug couriers. Tapia-Matosian's reading of the district court's statements is simply incorrect. The quoted statements merely reflect the district court's conclusion that although high-level drug conspirators may send large quantities of marijuana over the border with relatively unsophisticated drug "mules," it is unlikely that they would send seventy-eight kilograms of far-more-valuable cocaine over the border in similar fashion. Accordingly, read in context, the comments set out above reflect a factual finding about the extent of Tapia-Matosian's likely participation in the importation of cocaine, rather than a conclusion that the actions of cocaine smugglers in general or Tapia-Matosian in particular are relatively more culpable than the actions of hypothetical marijuana couriers.

The district court engaged in the following colloquy with counsel for Tapia-Matosian at the sentencing hearing:

> THE COURT: [Tapia-Matosian] can only be considered for a minor role if we know who the other participants are and that there is a role and a group that's bringing in the drugs. Do we have that information?

> COUNSEL: Your Honor, I think that under the facts again, he being a courier –

THE COURT: See, we don't know he's a courier unless we have the rest of the organization. He could be doing this on his own.

COUNSEL: The Government didn't find any other evidence that he might have been a producer of this.

THE COURT: . . . . The burden is on you to show that he is a courier and what his limited role is. Otherwise, the assumption is that this is being done by him, for him, and he's the beneficiary.

Citing this colloquy, Tapia-Matosian argues the district court refused to even consider a role adjustment because Tapia-Matosian was "the only one convicted in the offense." Appellant's Brief at 11. Once again, Tapia-Matosian reads far too much into the district court's statements during sentencing. As aptly noted by the United States, § 3B1.2(b) only applies when a criminal defendant plays a minor role in concerted criminal activity. *See* U.S.S.G. § 3B1.2, application note 1; *see also United States v. Webster*, 996 F.2d 209, 212 (9th Cir. 1993) (holding § 3B1.2 adjustment available only when criminal activity involved more than one participant and defendant's culpability for such conduct was minor compared to other participants); *United States v. Caballero*, 936 F.2d 1292, 1299 (D.C. Cir. 1992) (same). The comments of the district court set out above merely reflect Tapia-Matosian's failure to meet his burden of proving his entitlement to a § 3B1.2(b) adjustment. *Ayers*, 84 F.3d at 383 ("Under U.S.S.G. § 3B1.2, it is the defendant's burden to establish by a preponderance of the evidence that he or she is entitled to an offense reduction."). In particular, Tapia-Matosian failed to

adequately identify other conspirators so that the district court could undertake a proper comparison of Tapia-Matosian's culpability. Tapia-Matosian's assertions to the contrary, the district court's statements cannot reasonably be read as standing for the proposition that Tapia-Matosian was not entitled to the adjustment because he was the only one convicted of the offense.

*B. Safety Valve Provisions*

Tapia-Matosian contends that he was improperly denied a two-level downward adjustment under the safety valve provision of the sentencing guidelines. *See* 18 U.S.C. § 3553(f); U.S.S.G. 5C1.2. This court reviews the district court's determination that Tapia-Matosian is not entitled to relief under § 3553(f) for clear error. *See United States v. Roman-Zarate*, 115 F.3d 778, 784 (10th Cir.1997). To the extent the district court interpreted the scope and meaning of 3553(f)(5), this court reviews its legal interpretations de novo. *See United States v. Verners*, 103 F.3d 108, 110 (10th Cir. 1996).

To override a mandatory minimum sentence, Tapia-Matosian must meet all five requirements of the safety valve provision: (1) that he does not have more than one criminal history point under the sentencing guidelines; (2) that he did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) that the offense did

not result in death or serious bodily injury; (4) that the defendant was not a leader or organizer of the offense and that he was not engaged in a continuing criminal enterprise; and (5) that, not later than the time of sentencing, he "truthfully provided to the Government all information and evidence concerning the offense or offenses that were part of the same course of conduct or a common scheme or plan." 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. The burden of proving all five requirements by a preponderance of the evidence lies with Tapia-Matosian. *See Verners*, 103 F.3d at 110.

At sentencing, the United States agreed that Tapia-Matosian met the first four safety-valve criteria. Accordingly, the sole issue before the district court was whether Tapia-Matosian truthfully told all he knew to the government. As to this issue, Tapia-Matosian argues the case should be remanded for re-sentencing because the district court failed to exercise independent judicial discretion and, instead, simply "signed off" on the government's assertion that Tapia-Matosian had not satisfied the truthful disclosure criterion. A close review of the transcript of the sentencing hearing belies this assertion.

The transcript of the sentencing hearing reflects that the district court denied Tapia-Matosian's request for safely-valve relief only after considering remarks and arguments of counsel and the government and responses made by Tapia-Matosian to questions by the district court about the extent of the criminal

enterprise and Tapia-Matosian's involvement therein.  In light of this information, the district court concluded that Tapia-Matosian's claim he was recruited at the border was not credible and that he failed to adequately identify the other participants in the criminal enterprise.  Accordingly, the district court found as follows: "[T]he burden is on you to satisfy the Government that you've told them everything.  You've not satisfied them of that.  And, frankly, I'm not convinced.  You didn't go through with the controlled buy, and you could have provided more information, I think, as to the sources."  Accordingly, Tapia-Matosian's assertions to the contrary notwithstanding, the district court did indeed exercise independent judicial discretion in concluding that Tapia-Matosian was not entitled to safety-valve relief.  Furthermore, the district court's conclusion Tapia-Matosian failed to prove his entitlement to safety-valve relief is supported by the record and is, thus,  not clearly erroneous.

### III.  CONCLUSION

For all of the reasons set out above, the sentence imposed by the district court is hereby   **AFFIRMED** .

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge