**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FRANCISCO OCHOA-ZARAGOZA,

Defendant - Appellant.

Nos. 99-4051
and 99-4106

(D. Utah)

(D.C. No. 97-CR-303-C)

### ORDER AND JUDGMENT[*]

Before **KELLY**, **ANDERSON**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34 (a)(2); 10th Cir. R. 34.1(G).  This cause is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Francisco Ochoa-Zaragoza appeals his conviction and sentence for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Mr. Ochoa-Zaragoza claims that the district court erred by: (1) denying his motion to suppress; (2) admitting testimony by a United States Deputy Marshal about a conversation with Mr. Ochoa-Zaragoza in English during transport to the courtroom; (3) limiting the Fed. R. Evid. 704(a) expert opinion testimony of a language and linguistics expert regarding Mr. Ochoa-Zaragoza's ability to comprehend English; (4) admitting blurred photographs and the seized methamphetamine evidence in violation of Fed. R. Evid. 403 because the danger of unfair prejudice substantially outweighed the probative value; and (5) failing to reduce his sentence pursuant to the "safety valve" provision of the United States Sentencing Guidelines § 5C1.2. For the reasons stated below, we affirm.

## I. BACKGROUND

On September 22, 1997, the Utah Highway Patrol stopped Mr. Ochoa-Zaragoza at an administrative checkpoint, pursuant to a court order,[1] on

---

[1]The stated purposes of the checkpoint were to inspect driver's licenses, registration certificates, and license plates; to check for outstanding warrants; to inquire if drivers had been drinking or were impaired by, or in the possession of, controlled substances; and to examine vehicles for required exterior safety

(continued...)

Interstate 70 near Green River, Utah. Trooper Riches, an eight-year law enforcement veteran, asked the driver, Mr. Ochoa-Zaragoza, in English, for his license and registration. Trooper Riches testified that Mr. Ochoa-Zaragoza said, in English, that his license had been suspended. See R. Vol. II at 20. While Mr. Ochoa-Zaragoza and the passenger were looking for the registration, Riches asked who owned the truck, which had California license plates. After looking at the registration listing Jacquez Cruz as owner, Mr. Ochoa-Zaragoza answered "Cruz owns the truck." Id. at 22-23. While waiting for the registration, Riches noticed an empty truck bed with noticeable scratch marks on the bolts and only one duffle bag of clothing behind the front seat. When asked, Mr. Ochoa-Zaragoza said Denver was his destination. Trooper Riches testified that Mr. Ochoa-Zaragoza appeared to understand his questions and answered in English. See e.g., id. at 25. Trooper Riches also noted that both Mr. Ochoa-Zaragoza and the passenger avoided eye contact.

Trooper Riches asked Mr. Ochoa-Zaragoza to pull the truck out of the line of traffic and to then step out of the truck. Ochoa-Zaragoza repeatedly changed his answer about why he was going to Denver (visiting his cousin, then sister,

---

[1](...continued)

devices. The court order required that motorists could not be detained longer than a reasonable time necessary to check these purposes, except for appropriate enforcement of violations.

then friend). See id. at 28. The passenger said he did not know why they were going to Denver or for how long. Mr. Ochoa-Zaragoza told the passenger in Spanish to tell Riches that they were going to find work in Denver, not knowing that Riches, fluent in Spanish, overheard them. When questioned as to whether Mr. Ochoa-Zaragoza had permission to have the truck, he said "yes." Id. at 38. He answered "no" when asked if he was in possession of any illegal drugs, weapons, large amounts of money, or other illegal contraband. Mr. Ochoa-Zaragoza responded "yes," when Trooper Riches asked if he could search the truck. R. Vol. III at 39. This conversation was solely in English. Trooper Riches disputed Mr. Ochoa-Zaragoza's testimony that he told Riches twice that he did not understand English.

A search of the passenger compartment revealed a pager and roll of duct tape. Riches noticed scratch marks on the fuel access door bolts and then looked at the fuel tank under the truck. He noticed apparent alterations of the clamp and the tank with clean bolts on a dirty tank. A narcotics-sniffing dog and handler circled the truck and alerted on the area of the fuel tank.

Trooper Riches asked Mr. Ochoa-Zaragoza if he could take the truck to a local garage to put it on a hoist. Mr. Ochoa-Zaragoza said "yes." At the garage, methamphetamine was discovered in seven sealed PVC-pipe containers in the fuel

tank. Mr. Ochoa-Zaragoza was cited for driving on a suspended license, and he and his passenger were placed under arrest.

At the Highway Patrol station, Sergeant Christman began to interview Mr. Ochoa-Zaragoza. Sergeant Christman gave the Miranda warning in English. He testified that "I got the impression that he wasn't understanding me, and I had Trooper Riches give the Miranda in Spanish." R. Vol. III at 87. Sergeant Christman testified that Mr. Ochoa-Zaragoza waived his rights, in Spanish, and agreed to talk to the officers. See id. Trooper Riches translated Sergeant Christman's questions and Mr. Ochoa-Zaragoza's answers. Mr. Ochoa-Zaragoza, in Spanish and some English, explained that he was to leave the truck in a restaurant parking lot in Denver for another man to pick up. He acknowledged the presence of the drugs but did not know the quantity. See id. at 88. He stated that the passenger, his nephew, did not know about the drugs.

Upon referral from the district judge, the magistrate judge held a hearing to consider Mr. Ochoa-Zaragoza's motion to suppress the search and statement evidence. The magistrate judge rejected Mr. Ochoa-Zaragoza's argument that his detention at the checkpoint was unreasonable and that his lack of English ability showed that he could not have consented to the search or waived his Miranda rights. The district court adopted the magistrate judge's findings and recommendation and denied the motion.

A jury found Mr. Ochoa-Zaragoza guilty on the sole count of the indictment for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Mr. Ochoa-Zaragoza received a sentence of 121 months, the low end of the applicable sentencing guideline range.

## II. DISCUSSION

### A. Motion to Suppress

Mr. Ochoa-Zaragoza alleges that the district court erred by denying his motion to suppress the search and statement evidence. He argues that because Trooper Riches did not issue a citation for driving without a license until after the search and did not return the truck's registration, the subsequent seizure was invalid and should be suppressed. Further, he argues that he did not knowingly and intelligently consent to the search of the vehicle. Finally, Mr. Ochoa-Zaragoza alleges that his incriminating statements, made after his arrest, should be suppressed because he could not have understood his Miranda rights.

"When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government." United States v. Villa-Chaparro, 115 F.3d 797, 800-01 (10th Cir. 1997). However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law that we review de novo. See id.

### 1. *Initial Stop and Detention*

Mr. Ochoa-Zaragoza concedes that the initial stop at the administrative checkpoint was valid and admits that "the defendant's failure to present Trooper Riches with a valid license justified an extension of the detention beyond the average thirty (30) second stop at the roadblock." Appellant's Br. at 22. However, he argues that the stop was impermissibly extended by Trooper Riches' questions while retaining the truck's registration.

We analyze traffic stops, which are analogous to investigative detentions, under the principles stated in Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996). During a routine traffic stop, an officer may inquire about travel plans and relationship with a passenger without exceeding the scope of the stop. See United States v. Hernandez, 93 F.3d 1493, 1499 (10th Cir. 1996). To detain a driver for further questioning not related to the initial stop, an officer must have "an objectively reasonable articulable suspicion that illegal activity has occurred or is occurring." United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993). When an officer retains the driver's license and registration, the driver is not free to leave, see United States v. Walker, 933 F.2d 812, 817 (10th Cir. 1991); the resulting detention must be supported by reasonable suspicion.

Factors that justify reasonable suspicion to permit additional questioning, all present here, include driving with a suspended license, lack of proof of ownership or authority to operate the vehicle, and inconsistent destination statements. See United States v. Hunnicutt, 135 F.3d 1345, 1349 (10th Cir. 1998). Our reasonable suspicion inquiry involves the totality of the circumstances. See United States v. Sokolow, 490 U.S. 1, 8 (1989). We agree with the district court[2] that the question of ownership of the truck, inconsistent statements about destination, lack of luggage, and freshly scratched, unusual bolts created reasonable suspicion to support the continued detention and questioning. See Report & Recommendation at 24 (Aug. 17, 1998).

### 2. Consent to Search

Mr. Ochoa-Zaragoza argues that he did not understand the conversation in English with Trooper Riches so he could not have knowingly or voluntarily consented to the search. A valid consent to search must be "freely and intelligently given." Soto, 988 F.2d at 1557. Voluntariness is a question of fact to be determined by examining the totality of circumstances. See Ohio v. Robinette, 519 U.S. 33, 40 (1996). Trooper Riches testified that Mr. Ochoa-

---

[2]The district court adopted the Report and Recommendation of the magistrate judge and denied the motion to suppress.

Zaragoza conversed in English and gave knowing consent. The district court specifically found Trooper Riches' testimony more credible than Mr. Ochoa-Zaragoza's. See Report & Recommendation (Aug. 17, 1998) at 25. We note that "judging the credibility of the witnesses, determining the weight to be afforded the testimony, and drawing reasonable inferences and conclusions from the testimony are within the province of the district court." United States v. Gama-Bastidas, 142 F.3d 1233, 1239-40 (10th Cir. 1998). Mr. Ochoa-Zaragoza responded to Trooper Riches' questions as expected of one who speaks English. He did not attempt to withdraw consent or object to the search and presented no evidence of coercion. We cannot conclude that the district court clearly erred when it found voluntary consent.

### 3. *Miranda Waiver*

Mr. Ochoa-Zaragoza alleges that his incriminating statements, made after his arrest, should be suppressed because he could not have understood his Miranda rights. He argues that his limited education, unfamiliar surroundings, and cultural differences prevented him from understanding his Miranda rights. Both Christman and Riches testified that Ochoa-Zaragoza was notified of his Miranda rights in English and Spanish and voluntarily waived those rights. The district court's findings that Mr. Ochoa-Zaragoza waived his Miranda rights and

that his statements to Christman and Riches were knowingly and intelligently given are not clearly erroneous.

## B. Testimony by Deputy Marshal

Mr. Ochoa-Zaragoza argues that the district court erred by admitting testimony by a United States Deputy Marshal about a conversation with Mr. Ochoa-Zaragoza in English during transport to the courtroom.[3] He argues that the conversation was an impermissible interrogation outside the presence of counsel, violating his Miranda rights. Once a defendant has invoked his right to counsel, law enforcement officers cannot interrogate the defendant outside the presence of his attorney unless the defendant waives the right. See United States v. Roman-Zarate, 115 F.3d 778, 782 (10th Cir. 1997) (citing Miranda v. Arizona, 384 U.S. 436, 474 (1966)).

Mr. Ochoa-Zaragoza appears to have waived his right of appeal on this issue. See R. Vol. IV at 84 (regarding objection to Deputy Marshal's testimony, "I'm going to strike my objection"); Fed. R. Evid. 103. Absent a proper

---

[3]The Deputy Marshal testified that while transporting Mr. Ochoa-Zaragoza to the courtroom, he asked how long the trial would be. Mr. Ochoa-Zaragoza responded that he thought the trial would last about four days. When the Marshal asked if the jury had been picked, Mr. Ochoa-Zaragoza responded "yes." Mr. Ochoa-Zaragoza responded "in Utah," when asked where he had been arrested. Mr. Ochoa-Zaragoza also responded "yes" to a question confirming the name of his lawyer. The entire conversation was in English. See R. Vol. IV at 77-78.

objection, the alleged evidentiary error is waived for appeal except for plain error.

See United States v. Mendoza-Salgado, 964 F.2d 993, 1008 (10th Cir. 1992).  We

find no such plain error.

Even if the appeal on the issue were preserved, Mr. Ochoa-Zaragoza's

Miranda rights were not violated because the conversation was not an

interrogation.[4]  Incriminating statements made during this type of casual

conversation with law enforcement officials are not the product of interrogation.

See United States v. Criswell, 696 F.2d 636, 639 (8th Cir. 1983); United States v.

Hackley, 636 F.2d 493, 499-500 (D.C. Cir. 1980).  The district court did not err

by admitting the Marshal's testimony.


## C.  Expert Opinion Testimony

Dr. Steven Sternfeld, a language and linguistics expert, testified at the trial,

expressing his opinion that Mr. Ochoa-Zaragoza could not carry on an extended

English conversation.  However, Mr. Ochoa-Zaragoza argues that the district

court erred in failing to admit additional testimony of Dr. Sternfeld, concluding

that Mr. Ochoa-Zaragoza lacked the ability to comprehend or speak English

during questioning at the checkpoint and at the Green River garage.  We review

---

[4]The evidence indicates that the Deputy Marshal did not know that English ability was an issue at the trial.

the trial court's decision to admit or exclude expert testimony under the abuse of discretion standard. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, ___, 119 S. Ct. 1167, 1176 (1999). The record reveals that the district court had concerns about the reliability of Dr. Sternfeld's testimony,[5] since he was not present at the conversations at the checkpoint and the garage. The court also found that the testimony would not be helpful under Fed. R. Evid. 702 (Testimony by Experts), would be prejudicial, and that the jury could draw its own conclusions from the evidence about Mr. Ochoa-Zaragoza's English abilities. Thus, given these concerns and the other admitted expert testimony, we hold that the district court did not abuse its discretion in excluding Dr. Sternfeld's specific testimony that Mr. Ochoa-Zaragoza could not comprehend the conversations with Trooper Riches at the checkpoint and the Green River garage.

## D. Photographs and Methamphetamine Evidence

Mr. Ochoa-Zaragoza argues that the district court erred in admitting blurred photographs of the scratched screws on the truck, photographs of the canisters found in the fuel tank, and the actual seized canisters and methamphetamine. He

---

[5]The district court specifically stated that the disputed expert testimony "isn't reliable because the doctor, expert that he is, was not there [at the conversations between Mr. Ochoa-Zaragoza and Trooper Riches]. And getting one side from a written [police] report and one side from the defendant is not reliable." R. Vol. IV at 98; see also id. at 97.

claims that admission of this evidence violates Fed. R. Evid. 403 because the danger of unfair prejudice substantially outweighed the probative value. Admission of evidence under Rule 403 is reviewed only for an abuse of discretion.  See United States v. Wacker, 72 F.3d 1453, 1469 (10th Cir. 1996). We find no abuse of discretion.

**E.  Sentencing Safety Valve Provision**

Mr. Ochoa-Zaragoza argues that the district court abused its discretion by denying a reduced sentence pursuant to the "safety valve provisions," U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f)(1)-(5).  Section 3553(f) serves "as a 'safety valve' to permit courts to sentence less culpable defendants to sentences under the guidelines, instead of imposing mandatory minimum sentences," United States v. Acosta-Olivas, 71 F.3d 375, 378 (10th Cir. 1995), and provides that the district court shall impose a sentence pursuant to the sentencing guidelines, without regard to the statutory minimum, if the defendant meets the section's criteria.  See 18 U.S.C. § 3553(f); see also U.S.S.G. § 5C1.2 (adopting verbatim the language of section 3553(f)).  The district court's conclusion that the defendant "is not eligible for relief under § 3553(f) is reviewed for clear error." Roman-Zarate, 115 F.3d at 784.

As the government noted, even if he qualified, the safety valve provision would not reduce Mr. Ochoa-Zaragoza's sentence.  While the provision would prevent the application of the statutory minimum of ten years, see 21 U.S.C. § 841(b)(1)(A)(viii), the sentencing guidelines would still apply.  Since Mr. Ochoa-Zaragoza's sentence range under the guidelines (based on his offense level of 32) was 121 to 151 months, which is greater than ten years, the safety valve provides no benefit.

The district court determined that even if Mr. Ochoa-Zaragoza's sentence range were lower,[6] he did not qualify for the safety valve reduction because the court specifically found him to be untruthful and thus not qualified under 18 U.S.C. § 3553(f)(5).[7]  The district court's findings are supported by the record and are not clearly erroneous.  See Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).

---

[6]Mr. Ochoa-Zaragoza appears to also argue, as he did at the sentencing hearing, that his offense level should have been reduced for aberrant conduct, see U.S.S.G. ch. 1, pt. A, intro. 4(d), or for being a minimal participant, see U.S.S.G. § 3B1.2(a).  The district court's findings refusing these sentencing reductions are supported by the record and are not clearly erroneous.

[7]"The defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  18 U.S.C. § 3553(f)(5).

## III.  CONCLUSION

For the reasons stated above, the conviction and sentence are AFFIRMED.


ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge