**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

WILLIE C. MAXIE, JR.,

    Defendant - Appellant.

No. 03-3086

D. Kansas

(D.C. No. 02-CR-40095-001-SAC)

---

**ORDER AND JUDGMENT** [*]

---

Before **MURPHY** , **ANDERSON** , and **McCONNELL** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore ordered submitted without oral argument.

Defendant Willie C. Maxie, Jr. pled guilty to one count of possession with intent to distribute fifty grams or more of crack cocaine, in violation of 21 U.S.C.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

§ 841(a)(1).  He was sentenced to 81 months imprisonment based, in part, upon the presentence report's finding that the offense involved 878.85 grams of crack cocaine.  Maxie appeals the district court's calculation as to the amount of crack cocaine involved, arguing that it was erroneously based upon information Maxie gave to law enforcement personnel after he began cooperating with the government, in violation of United States Sentencing Commission,        Guidelines Manual , §1B1.8.  We affirm.

## BACKGROUND

On July 17, 2002, Drug Enforcement Administration ("DEA") agents arranged a transaction through a confidential informant ("CI") whereby the CI purchased three "eight-ball" quantities of crack cocaine from Maxie.  As agreed, Maxie delivered the crack cocaine to the CI at the CI's place of business in Keats, Kansas, in exchange for $600.  Maxie was arrested at the scene.

After he was arrested, Maxie agreed to cooperate with the DEA agents in identifying his source for crack cocaine and in assisting in their investigation of other drug dealers.  Maxie also gave the agents his consent to search his two residences, one in Ogden, Kansas, and one in Junction City, Kansas.  Agents found a large amount of cash at the Ogden residence and they found an additional 22.3 grams of crack cocaine at the Junction City residence.  Maxie admitted that

the crack cocaine found at the Junction City residence was his and further admitted that two weeks prior to July 17, he had obtained approximately four ounces (113.4 grams) of crack cocaine from a source in Wichita. He further admitted that he had purchased nine-ounce (255.15-gram) quantities of crack from his source on numerous occasions.

Accordingly, on July 19 Maxie was charged by information with one count of possession with intent to distribute fifty grams or more of cocaine base. He waived indictment. Maxie and law enforcement personnel agreed that Maxie would continue to cooperate with and assist the DEA in its ongoing investigation. On July 22, Maxie's counsel sent to the government the following letter:

> This letter is to confirm our cooperation agreement in this case. My client, Willie Maxie, will continue to provide information and assist in the MET drug investigation. All information that he provides in the course of his cooperation is protected by Federal Rule of Criminal Procedure 11(e)(6), Federal Rule of Evidence 410, and U.S.S.G. §1B1.8. Further, if his cooperation is of substantial assistance, you will file a motion for downward departure pursuant to §5K1.1 and 18 U.S.C. § 3553(e) at the time of sentencing.

R. Vol. 1, tab 32. Maxie continued to cooperate with the DEA agents, providing "continuous and uninterrupted" assistance. Tr. of Sentencing at 6, R. Vol. 2.

Maxie entered a guilty plea on August 29, 2002. The plea agreement "stipulate[d] [that] the government and the defendant agreed the available evidence establishes the offense/relevant conduct attributable to the defendant is 113.4 grams of crack cocaine." Presentence Investigation Report ("PSR") ¶ 23,

-3-

R. Vol. 4. This was based upon Maxie's statement to DEA agents the night of his arrest that the portion of crack cocaine he had just sold to the CI came from a four-ounce (113.4-gram) piece of crack that he had obtained two weeks prior to the sale to the CI.

Notwithstanding the agreement as to amount by both the government and Maxie, the PSR determined that Maxie was responsible for 878.85 grams of crack cocaine. The PSR calculated this by using Maxie's July 17 statement that he had purchased nine-ounce (255.15-gram) quantities on multiple occasions. The PSR attributed three such purchases to Maxie, for a total of 765.45 grams (255.15 x 3), and then added 113.4 grams, the amount Maxie admitted he obtained from his source and a portion of which he sold to the CI. 878.85 grams corresponds to a base offense level of thirty-six. After a three-level reduction for acceptance of responsibility, bringing his total offense level to thirty-three, and, with a criminal history category of four, the PSR recommended a sentencing guideline range of 188 to 235 months. Both the government and Maxie objected to this part of the PSR, arguing that Maxie's statement about purchasing multiple nine-ounce quantities was protected under USSG §1B1.8 because it occurred while Maxie was cooperating with authorities.

On January 29, 2003, the government filed a motion for downward departure under USSG §5K1.1 and 18 U.S.C. § 3553(e) based upon Maxie's

assistance to the government. At the sentencing hearing on January 30, the district court heard testimony concerning Maxie's assistance. The government argued Maxie's sentence should be 50% of the low end of his otherwise applicable Guideline sentence, but in any event no less than 81 months. Maxie sought a 60 month sentence.

On February 11, 2003, the district court ruled on the parties' objections to the PSR and concluded that the PSR correctly attributed to Maxie 878.85 grams of crack cocaine. The court found that "§ 1B1.8 as written and applied precludes a cooperation agreement from giving retroactive protection to a defendant's incriminating statements made prior to any promises or agreements from the government to not use the information against the defendant." Ruling on Objections to Presentence Report at 7-8, R. Vol. 1, tab 37. The court also rejected Maxie's request for a downward departure to 60 months and instead adopted the government's recommendation of 81 months.

Maxie appeals, arguing the district court erred in rejecting the agreement by both parties that USSG §1B1.8 protected all incriminating statements made by Maxie, resulting in the court's erroneous conclusion that the relevant amount of crack cocaine was 878.85 grams. [1]

---

[1]The government argues that this appeal is, in reality, simply an appeal of the extent of the district court's downward departure pursuant to USSG §5K1.1,

(continued...)

# DISCUSSION

We review for clear error the district court's findings underlying the sentence imposed, and we review de novo the court's interpretation of the Sentencing Guidelines. United States v. Evans, 985 F.2d 497, 499 (10th Cir. 1993).

> USSG §1B1.8 provides as follows:
>
> (a) Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

We have stated that §1B1.8 only applies "where two separate agreements have been negotiated: (1) the defendant agrees to cooperate with the government by providing the requisite information, and (2) the government agrees not to use that information against the defendant." United States v. Roman-Zarate, 115 F.3d 778, 781 (10th Cir. 1997); see also Evans, 985 F.2d at 499. To establish the government's agreement not to use the information against the defendant, Maxie must prove that the government did more than merely assure him that his

---

[1](...continued)
and that we lack jurisdiction over the extent of a downward departure. See United States v. Fortier, 180 F.3d 1217, 1230 (10th Cir. 1999). We disagree. Maxie appeals the calculation of his base offense level. We have jurisdiction over such an appeal.

cooperation would be helpful to him, or that law enforcement personnel would notify the prosecutor and/or the judge of his cooperation. "[T]he agent's offer to notify the prosecutor could not be interpreted as an agreement to refrain from using defendant's incriminating statements against him." Roman-Zarate , 115 F.3d at 781; see also Evans , 985 F.2d at 499 (noting that "[n]o reasonable person could construe the [offer to tell the prosecutor that the defendant had cooperated] as a promise not to use self-incriminating information against" the defendant).

In this case, Maxie has clearly established the existence of the first agreement—he agreed to cooperate by offering information concerning the illegal activities of others. Maxie's incriminating statement was made on July 17, shortly after his arrest. DEA agent Harold Watson testified that Maxie stated on July 17 that "nine ounces of crack cocaine is the most cocaine he has purchased from [his source] at one particular time. Maxie stated that the purchase of this quantity has happened on multiple occasions." Tr. of Sentencing at 5, R. Vol. 2. Watson further testified that Maxie was told "that everything he did that day would be brought to the attention of the U.S. Attorney's Office." Id. at 7. Watson testified that no other promises were made: "The only promise[] that I told him was that I would bring it to the attention of the AUSA, as to whatever he was telling me would be brought to the attention of the United States Attorney's Office, that's it." Id. at 13. It is therefore clear that, as of July 17, the day Maxie

admitted to involvement with as much as 878.85 grams of crack cocaine, there was no agreement by the government not to use any information provided by Maxie against him.

Maxie argues that the cooperation agreement contained in the July 22 letter should be applied retroactively, to encompass all statements made by Maxie, whenever made. The district court rejected this argument. We agree with the district court. Maxie cites no case supporting the idea that a cooperation agreement created after incriminating information has been furnished can retroactively shield that information. Section 1B1.8 specifically provides that the prohibition on the use of information does not "restrict the use of information . . . known to the government prior to entering into the cooperation agreement." USSG §1B1.8(b)(1). That is precisely what happened in this case—information disclosed prior to the creation of the cooperation agreement was used in sentencing Maxie. Furthermore, were we to accept that a cooperation agreement could, in certain circumstances, operate retroactively, the agreement would need to contain language making that retroactive intent clear and unambiguous. Nothing in the cooperation agreement as memorialized in the July 22 letter makes that retroactive intent clear.

**CONCLUSION**

For the forgoing reasons, we AFFIRM Maxie's sentence.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge